IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| MICHAEL ANTHONY MCKEOWN, #272023, ) | Civil Action No. 3:08-4145-RBH-JRM |
| Plaintiff, ) | |
| vs. ) | |
| JIM KERNELL, COUNTY SQUARE, CO. ADM.; ) <br> JAIL ADM., MR. DORRIETY; ) <br> MEDICAL ADM., MRS. KLEIN; ) <br> CAPTAIN M. STOWERS; ) <br> MENTAL HEALTH MANG., MS. LARSON; ) <br> MS. MOSS, HEAD NURSE; ) <br> MS. PIAGENT, MENTAL HEALTH ) <br> COUNSELOR; AND ) <br> MS. NEVENS, MENTAL HEALTH ) <br> COUNSELOR, ) | **REPORT AND RECOMMENDATION** |
| Defendants ) | |

Plaintiff filed this action on December 29, 2008.[1] At the time of the alleged actions, he was a pretrial detainee at the Greenville County Detention Center ("GCDC"). He is currently an inmate at the Kershaw Correctional Institution of the South Carolina Department of Corrections ("SCDC"). He filed a motion to amend his complaint (to add additional claims and requests for relief), which was granted on November 10, 2009. Defendants filed a motion for summary judgment on July 17, 1009. Because Plaintiff is proceeding pro se, he was advised on July 17, 2009, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to Defendants' motion for summary judgment with additional evidence or counter-affidavits could result in the dismissal of his complaint. Plaintiff did not respond to the Roseboro order and the undersigned, on September 1,

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02 (B)(2)(d), DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the court.

2009, issued an order allowing Plaintiff an additional fifteen days in which to advise the Court whether he wished to continue to prosecute this action. Plaintiff (after being granted an extension of time) filed a response on October 26, 2009.[2]

## DISCUSSION

Plaintiff appears to allege constitutional claims pursuant to 42 U.S.C. § 1983 concerning his medical care at GCDC. He was detained at the GCDC on September 23, 2008.[3] Plaintiff claims that because he had recently been incarcerated at SCDC and the GCDC, employees at GCDC had access to his medical chart and should have prescribed him his previous medications. He claims that he "managed" to get one of his medications, Zoloft, prescribed by drinking cleaning solution. Plaintiff later threatened to jump off the top tier of the mental health pod at GCDC if his medications were not started. He became depressed and started banging his head, which he claims resulted in a permanent scar. Plaintiff was then placed in the Specialized Housing Unit ("SHU") on a suicide watch. He next damaged a fire sprinkler, which he claims resulted in his being prescribed Neurontin. Nurse Johnson allegedly obtained his chart and told him all his medications were on his chart. Plaintiff claims that he was still not getting all the medications he thought he should have, which "sent him over the edge" and caused him to attempt to hang himself. In the amendment to his complaint, Plaintiff claims that in April 2009 "medical" changed a doctor's prescription for pain medication he received from a hospital physician after he "lost control of his ability to stay sane",

---

[2] On May 7, 2009, Plaintiff filed a "reply" to Defendants' Answer to the Complaint. This response, with exhibits, was also considered by the undersigned in preparing this report and recommendation.

[3] He was arrested on charges of strong armed robbery, conspiracy, and possession of a weapon during a robbery. Defendants' Motion for Summary Judgment, Ex. A - GCDC 0001-0018.

2

struck a door, and broke his hand in two places. He requests monetary damages and injunctive relief (including being allowed to see certain physicians and receive his preferred medications).[4] He also requests that the "fire warrant" be dropped.[5] In his amended complaint, Plaintiff requests additional monetary damages including damages for mental anguish and humiliation. Defendants contend that their motion for summary judgment should be granted because: (1) Plaintiff produced no evidence to show that Defendants were deliberately indifferent to a serious medical need; and (2) Plaintiff failed to demonstrate that he exhausted all of his available administrative remedies.

1. **Administrative Remedies**

Defendants contend that Plaintiff failed to demonstrate that he exhausted all of his available administrative remedies. In his Complaint, Plaintiff wrote that he filed grievances in October and November 2008, but received no responses. In his opposition memorandum, Plaintiff argues that the records show that he filed two grievances, one of which was filled out by "an Officer Woody because Plaintiff could not write due to the fact he was in [] the SHU."[6]

---

[4]As Plaintiff is no longer detained at the GCDC (he is now a prisoner at SCDC), his claims for injunctive relief are moot. See Williams v. Griffin, 952 F.2d 820 (4th Cir. 1991); and Ross v. Reed, 719 F.2d 689 (4th Cir. 1983).

[5]On November 14, 2008, Plaintiff was charged with malicious or willful injury to a jail for allegedly damaging the fire sprinkler in his cell which activated the fire suppression system. Plaintiff appears to be asking this court to have this charge dropped. Absent extraordinary circumstances, federal courts are not authorized to interfere with a State's pending criminal proceedings. See, e.g., Younger v. Harris, 401 U.S. 37, 44 (1971); Cinema Blue of Charlotte, Inc. v. Gilchrist, 887 F.2d 49, 50-53 (4th Cir. 1989), cert. denied, 494 U.S. 1030 (1990)(federal district courts should abstain from constitutional challenges to state judicial proceedings, no matter how meritorious, if the federal claims have been or could be presented in an ongoing state judicial proceeding).

[6]Plaintiff may be attempting to allege that Defendants violated his constitutional rights by failing to respond to grievances he filed. The "Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by the state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Even assuming that Defendants violated GCDC grievance procedures,
(continued...)

3

"No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). In Porter v. Nussle, 534 U.S. 516 (2002), the Supreme Court held that the Prison Litigation Reform Act's ("PLRA"), 42 U.S.C. § 1997, exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. Porter, 534 U.S. at 532. The Fourth Circuit, in Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674 (4th Cir. 2005), held that an inmate's failure to allege exhaustion does not constitute failure to state a claim and the failure to exhaust is an affirmative defense that should be pleaded or otherwise properly raised by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies." Id. at 683.

In their motion for summary judgment, Defendants assert that Plaintiff did not exhaust the administrative remedies available at the GCDC. They, however, have not provided anything to show what administrative remedies were available or what Plaintiff had to do to exhaust his administrative

---

[6](...continued)
such actions do not state a claim which is actionable under § 1983. See Brown v. Dodson, 863 F. Supp. 284 (W.D.Va. 1994). Further, any allegations that Defendants have not followed their own policies or procedures, standing alone, do not amount to constitutional violations. See United States v. Caceres, 440 U.S. 741 (1978); see also Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990)(if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a federal due process issue); Keeler v. Pea, 782 F. Supp. 42, 44 (D.S.C. 1992)(violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983).

remedies at the GCDC. They assert that there is no record that Plaintiff followed through with any grievance, but have provided no records or affidavits to support this. Defendants have not met their burden of showing that Plaintiff did not exhaust his available GCDC administrative remedies. See Anderson, 407 F.3d at 683 (inmate's failure to exhaust administrative remedies is an affirmative defense to be both pled and proven by the Defendant).

Defendants also appear to argue that Plaintiff did not exhaust his administrative remedies because he did not appeal any denial of his grievance to the South Carolina Administrative Law Division. The fact that the South Carolina Legislature made a court available to prisoners who wanted to appeal a final decision by a jail facility denying a grievance does not alter the federal PLRA by extending its administrative exhaustion requirements to include exhaustion in all state judicial forums. In § 1983 matters, Congress only intended that "administrative remedies" be satisfied. See e.g., Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)(exhaustion under § 1997e(a) is administrative only; a prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court), cert. denied, 437 U.S. 949 (2002); Brown v. Evans Corr. Inst. Med. Staff, 2007 WL 1290359, at *4 (D.S.C. April 30, 2007).

### 2. **Medical Claims**

Plaintiff appears to allege that his constitutional rights were violated because Defendants failed to provide him with his prescribed medications for his mental condition, failed to provide him with proper pain medication, and failed to properly treat his orthopedic conditions.[7]

---

[7]Plaintiff also makes vague claims about being treated differently than others. An equal protection claim arises when, without adequate justification, similarly-situated persons are treated differently by a governmental entity. U.S. Const. amend XIV. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom
(continued...)

5

Defendants contend that Plaintiff fails to show that he had a serious medical need to which they were deliberately indifferent.

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976).[8] The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met.
>
> * * * * * * *
>
> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 182-83, 96 S.Ct. at 2925 (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted).

---

[7](...continued)
he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, (4th Cir. 2001). When the distinction is based on a "suspect classification" or effects the denial of a fundamental right, the constitutional scrutiny sharpens in focus to determine whether the classification is narrowly tailored to serve a compelling governmental interest." See Plyler v. Doe, 457 U.S. 202, 216-17 (1982). When a plaintiff is not a member of a suspect class he must prove that the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose. See Turner v. Safley, 482 U.S. 78, 89 (1987). Here, Plaintiff, has not asserted that he is a member of a suspect class and has not shown that similarly-situated persons are treated differently.

[8]Medical claims of a pretrial detainee are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. See City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239 (1983). However, the inquiry as to whether a pretrial detainee's rights were violated under the Fourteenth Amendment is the same as that for a convicted prisoner under the Eighth Amendment (deliberate indifference to a serious medical need). See Martin v. Gentile, 849 F.2d 863, 871 (4th Cir. 1988)(citing Estelle v. Gamble, 429 U.S. 97 (1976)).

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation.

> Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citations omitted). . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851.

The Supreme Court defined "deliberate indifference" in the Eighth Amendment context in Farmer v. Brennan, 511 U.S. 825 (1994). The court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted]. But an official's failure to alleviate a significant risk that

7

> he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Id. at 837-38.

Unless medical needs were serious or life threatening, and the defendants were deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, supra; Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Plaintiff fails to show that Defendants were deliberately indifferent to any of his serious medical needs. His claims instead appear to be a disagreement with medical personnel about the course of his treatment and medications prescribed. The medical records submitted by the parties indicate that Plaintiff was treated by medical personnel at GCDC on numerous occasions, x-rays were taken, medications were prescribed, and monitoring of his mental condition was performed.

Plaintiff claims that he should have been prescribed the medications he was taking at SCDC and that GCDC had a record of his prior prescriptions. GCDC mental health counselor Kristi Padgett ("Padgett"), however, states that Plaintiff was released from the SCDC approximately one month prior to his detention at GCDC on September 23, 2008, he discontinued taking his mental health medication approximately two weeks before his GCDC detention, and reportedly had been "self-medicating" with alcohol and crack cocaine. Padgett states that by September 26, 2008, Plaintiff was receiving Ativan as part of a detoxification regimen, and on September 29, 2008, he began receiving Zoloft. By October 10, 2008, a psychiatrist prescribed Neurontin, and on October 16, 2008, his dosages of both Zoloft and Neurontin were increased. Padgett states that throughout his stay at GCDC, Plaintiff received constant mental health care, including prescription medication and counseling sessions. Padgett Aff., Paras. 2, 5-7.

In the amendment to his complaint, Plaintiff alleges that he has been denied medical attention since March 20, 2009. Jim Dorriety, Greenville County Assistant County Administrator for Public Safety and Director of the GCDC, met with Plaintiff on March 31, 2009. He states that Plaintiff sent him a request form in which Plaintiff admitted receiving adequate medical treatment. On an Inmate Request Form dated March 31, 2009, Plaintiff wrote:

> For the record sir [,] I may have misunderstood what was going on[,] however[,] I will submit to sign what you brought to me only because the truth is I am getting adequate medical treatment[.] Just know I am in pain and if I can continue to receive ad[e]quate medical services I will sign your paper.

Attachment to Dorriety Aff.

Tracy Krein, the Medical Administrator for the GCDC, states that Plaintiff received constant and continuous medical and mental health treatment while he was an inmate at the GCDC. Krein Aff., Para. 5. She provided a copy of Plaintiff's medical records with her affidavit. These records reveal that Plaintiff was evaluated by Psychological Services on September 23, 2008 (the day he was booked into the GCDC). It was noted that he had stopped taking his medication two weeks prior, was drinking alcohol, and was taking crack cocaine. His medications were requested from SCDC. GCDC 0044. On September 25, 2008, Plaintiff complained that he was injured during the course of his arrest on September 23, 2008, which caused his left knee to keep collapsing and resulted in unbearable pain. It was noted that a videotape (reviewed on September 26, 2008 in conjunction with an unrelated incident) revealed that Plaintiff was walking around the cell without difficulty, he had no complaints of any type of pain when evaluated by medical, and he had good movement of all extremities. GCDC 0045. On September 26, 2008, Plaintiff was treated for ingesting cleaning fluid, evaluated by GCDC Psychological Services, started on Zoloft, and started on detoxification medications (Ativan). GCDC 0046-0051. On September 28, 2008, he was given a knee brace, a

9

three day prescription of Ultram with a prescription for Tylenol thereafter, and prescription for Neurontin. GCDC 0052. Psychological Services evaluated Plaintiff on September 3, 2008. Plaintiff was noted to be medication seeking (Ativan). GCDC 0053. On October 2, 2008, Plaintiff was examined for complaints of knee pain. He was given a knee brace for support, a three day supply of Ultram with Tylenol was prescribed, and an x-ray was ordered. Plaintiff was also evaluated by Psychological Services, at which time it was noted that Plaintiff rejected discussion of anything except medication. GCDC 0055-0059. An x-ray of Plaintiff's left knee on October 7, 2008 was reportedly "normal." GCDC 0066. Plaintiff was examined by Psychological Services on October 8 and 9, 2008. Dr. Ernest Martin, a psychiatrist, adjusted Plaintiff's medications on October 9, 2008. GCDC 0069-0073. Plaintiff complained about his medications again on October 11, 2008, and his medications as per his previous incarceration were started on October 13, 2008. GCDC 0074. Dr. Martin assessed Plaintiff's medications again on October 16, 2008. GCDC 0079. Plaintiff's records indicate that he continued to receive medical and psychological assessments, including medication adjustments. He also complained about the pain medications he received, seeking his preferred drugs rather than the prescribed Tylenol (which he refused to take). Plaintiff complained of shoulder pain, but an x-ray of his shoulder on February 19, 2009 was "unremarkable." GCDC 0157.

Plaintiff appears to disagree with the type and amount of medical treatment he received. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988). The provision of medical care by prison officials is not discretionary, but the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994). A disagreement as to the proper treatment to be received does not

in and of itself state a constitutional violation. See Smart v. Villar, 547 F.2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986). Although Plaintiff believes that he should have received different medical treatment, he fails to show that Defendants' actions or inactions rose to the level of a constitutional violation.

### 3. Emotional Injury

Plaintiff alleges that he has suffered mental anguish and humiliation as a result of Defendants' actions. There is no federal constitutional right to be free from emotional distress, psychological stress, or mental anguish, and, hence, there is no liability under § 1983 regarding such claims. See Grandstaff v. City of Borger, 767 F.2d 161 (5th Cir. 1985), cert. denied, 480 U.S. 916 (1987); and Rodriguez v. Comas, 888 F.2d 899, 903 (1st Cir. 1989). The PLRA provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility for mental or emotional injury suffered while in custody without a prior showing of physical injury.[9]

42 U.S.C. § 1997e(e).

### 4. State Law Claims

Defendants contend that to the extent Plaintiff is attempting to assert a state tort claim against them in their individual capacities, such action is barred by the South Carolina Tort Claims Act. Defendants' Motion for Summary Judgment at 6, n. 1. As Plaintiff fails to show that Defendants violated his rights under § 1983 (as discussed above), only his state law claims (if any)

---

[9]The PLRA does not define "physical injury" and the Fourth Circuit has not ruled on the issue, but the Fifth Circuit held that "physical injury" must be more than de minimis, but need not be significant. Siglar v. Hightower, 112 F.3d 191 (5th Cir. 1997)(concluding that a sore, bruised ear lasting for three days was de minimis and failed to meet the requisite physical injury to support a claim of emotional or mental suffering); see also Zehner v. Trigg, 952 F. Supp. 1318 (S.D. Ind. 1997)(exposure to asbestos not physical injury necessary to support claim for mental or emotional injury under the PLRA), aff'd, 133 F.3d 459 (7th Cir. 1997).

would remain. Thus it is also recommended, pursuant to 28 U.S.C. § 1367(c)(3), that any remaining state law claims be dismissed.

## **CONCLUSION**

Based on review of the record, it is recommended that Defendants' motion for summary judgment (Doc. 30) be **granted**.

Joseph R. McCrorey
United States Magistrate Judge

January 20, 2010
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).